# NO. 12-08-00426-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SHANNON DENISE JUDD,* *APPELLANT* | § | *APPEAL FROM THE 4TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *RUSK COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Shannon Denise Judd appeals her conviction for possession of a controlled substance, methamphetamine in an amount less than one gram. A jury found her guilty, and the trial court sentenced her to two years of confinement in a state jail facility, probated for two years, and imposed a fine of one thousand dollars. On appeal, Appellant contends that the trial court erred in overruling her motion to suppress and in admitting certain evidence, and that the evidence is insufficient to support the conviction. We affirm the trial court's judgment.

### BACKGROUND

Law enforcement officials received reports from the community that Appellant and a codefendant, Michael Moore, were manufacturing methamphetamine at their residence. Rusk County Sheriff's Deputy Brandon Davidson obtained a search and arrest warrant authorizing their arrest and the search of a mobile home and a small camper trailer parked next to the mobile home. A confidential informant was in the mobile home prior to Davidson's obtaining the warrant, and confirmed that Moore and Appellant were manufacturing methamphetamine at the location.

The warrant alleged that evidence of the manufacture and delivery of methamphetamine or other controlled substances, including chemicals used to manufacture methamphetamine, was located at the premises described as follows:

> A trailer house located at 10328 Cr 2142 in Rusk County. To reach this location, you travel from the traffic star in Henderson approximately 12.5 miles on Hwy 43 towards Tatum. Turn left on Cr 2142. Travel approximately 1.5 miles to a dirt driveway on the right side of the road. The residence in question is a single family mobile home, white in color, with brown trim. The door to the residence is located on the east side of the residence, and opens outward. On that same plot of land, there is a white in color camper trailer, which resides on the right hand side of the residence.

Michael Moore, Appellant, and two other individuals were identified as being in control of the location. The warrant further alleged that those four named individuals possessed the ingredients and other products used to manufacture methamphetamine.

When the deputies served the search warrant, Appellant and another codefendant, Ben Coleman, locked themselves in the small camper trailer. The officers had to pry open the only door of the camper to enter it. Appellant and Coleman were brought out, handcuffed, and subsequently transported to jail to be processed. The officers executed the search warrant, seizing, photographing, and collecting the various items listed in the search warrant's return. The officers seized, among other items, a small bag of methamphetamine that was on a digital scale on the kitchen counter next to the door of the camper, a syringe containing liquid later confirmed to be methamphetamine, a homemade "gas generator" used to manufacture methamphetamine, four lithium batteries, and five boxes of pseudoephedrine pills that could be used in the manufacture of methamphetamine.

Appellant moved to suppress the search warrant, arguing that the address was incorrect. She contended that because of the vagueness of the description of the premises to be searched and confusion of the addresses, the search was a warrantless search. At the suppression hearing, Appellant called Michael Moore's father, John Moore, who testified that the address on the search warrant, 10328 CR 2142, was the address for his brick home. Moore also testified that when the warrant was served, Appellant and his son, Michael, were living with him in the brick home, which was not raided. John Moore also testified that the 9-1-1 address for the mobile home is 10410 CR 2142 and that Michael's ex-wife lives in the mobile home.

The State called former deputy Brandon Davidson who testified that a single mailbox reflected the only address there was for both the brick house and the mobile home, 10328 CR 2142. Davidson also testified that a single dirt driveway led from the county road to the two residences, which were on the same piece of property and were a short distance apart. Davidson testified that any officer following the directions on the search warrant could find the mobile home and camper trailer. Davidson also testified that there was not a mailbox identifying 10410 CR 2142. The court overruled Appellant's motion to suppress.

At trial, Davidson testified that when the search warrant was executed, Appellant and Coleman locked themselves in the small camper trailer, and the officers had to pry open the door to get them out. Davidson testified about the various items seized in the camper trailer. Karen Shumate, a chemist with the Texas Department of Public Safety laboratory in Tyler, testified that the chemical analysis of the white powder in the bag found on the digital scales showed the substance was methamphetamine. She also testified that the liquid in the syringe contained .09 grams of methamphetamine.

The jury returned a verdict of guilty of possession of less than one gram of methamphetamine. The trial court sentenced Appellant to two years in a state jail facility, probated for two years, and imposed a one thousand dollar fine.

## SUPPRESSION OF THE EVIDENCE

In her first issue, Appellant contends the trial court erred in overruling her motion to suppress. She argues that because the warrant was vague and defective in describing the premises to be searched, it did not meet the requirements of Article I, Section 9 of the Texas Constitution. Specifically, Appellant contends that the search warrant was invalid because the address on the warrant was not the address of the premises actually searched. She argues that the evidence shows that the brick home was at 10328 CR 2142, the address on the warrant, but the trailer house and camper trailer searched pursuant to the warrant were at 10410 CR 2142.

**Applicable Law**

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to the

3

trial court's determination of historical facts and then review de novo the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim App. 2000). Where the trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's rulings, and assume the trial court made implicit findings of fact supporting its ruling. *Id*. at 327-28.

Article I, Section 9 of the Texas Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation." TEX. CONST. art. I, § 9; *see also* TEX. CODE CRIM. PROC. ANN. arts. 18.01(c), 18.04 (Vernon 2005 & Supp. 2008).

One of the goals of requiring specificity of a search warrant is to prevent the mistaken execution of a warrant against an innocent third party, which "goal is met when the warrant identifies the place to be searched sufficiently so that the officers who execute the warrant, acting as reasonable men, can locate the place and identify it from other places in the community." *Bridges v. State*, 574 S.W.2d 560, 562 (Tex. Crim. App. 1978). If a warrant describes the place to be searched with enough precision and detail to permit any officer to locate the property with no reasonable probability of a mistaken execution, the description is always adequate whether or not it contains technical defects. *See Taylor v. State*, 974 S.W.2d 851, 855 (Tex. App.–Houston [14th Dist.] 1998, no pet.)(search warrant held valid where address on warrant was "7131 Fox Port" but actual address where search conducted was "7031 Foxport"); *Williams v. State*, 928 S.W.2d 752, 754 (Tex. App.–Houston [14th Dist.] 1996), *aff'd*, 965 S.W.2d 506 (Tex. Crim. App. 1998)(address on valid warrant was 10222 Forum West, but location was 10210 Forum West).

## Analysis

Appellant argues that because John Moore testified that the address for the brick house is 10328 CR 2142, but the address for the trailer house next to the camper that was actually searched is 10410 CR 2142, the search warrant was invalid. However, there was no address posted at the location other than the 10328 CR 2142 address used in the search warrant. A single driveway led to both residences, which were situated on the same piece of property. Further, the search warrant clearly described the trailer house and the small camper trailer, as compared with John Moore's brick

4

house.  The officer who obtained the search warrant also served the warrant and testified he had no difficulty finding the correct residence, the mobile home, and the correct camper trailer to search. Thus, even though the warrant contained an erroneous address, its description of the premises to be searched was sufficiently specific.  *See Bridges*, 574 S.W.2d at 562.  On the record before us, we cannot say the trial court abused its discretion in denying Appellant's motion to suppress.  *See Guzman*, 955 S.W.2d at 89.  We overrule Appellant's first issue.

**ADMISSION OF EVIDENCE SEIZED**

In her second issue, Appellant asserts that the trial court erred in admitting evidence of several items seized during the execution of the search warrant.  She specifically complains of the introduction of the plastic bag containing 2.2 grams of a white powder believed to be methamphetamine, a twelve gauge shotgun, four lithium batteries, five boxes of pseudoephedrine pills, a wooden box containing miscellaneous drug paraphernalia, a syringe with a clear liquid inside, a bottle of muriatic acid, a bottle of iodine, and a gas generator.  Appellant argues that these items are  "overwhelmingly prejudicial when compared to the insignificant amount [she] was convicted of possessing."  Further, she argues that most of these items were not related to the offense with which she was charged.

**Applicable Law**

Generally, in order for an appellant to argue on appeal that a trial court erred by allowing a party to pose a specific question to a testifying witness or party, he must have preserved the error at trial by making a proper objection and securing a ruling on the objection.  *See* TEX. R. APP. P. 33.1; *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).  An objection should be made as soon as the ground for objection becomes apparent.  *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997).  If a party fails to object until after an objectionable question has been asked and answered, and she can show no legitimate reason to justify the delay, her objection is untimely and error is waived.  *Id.*

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard.  *See State v. Mechler,* 153 S.W.3d 435, 439 (Tex. Crim. App. 2005); *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996).  A trial court does not abuse its discretion

when its decision is within the zone of reasonable disagreement. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible to establish motive, opportunity, knowledge, or the absence of mistake or accident. TEX. R. EVID. 404(b). Where the extraneous offense evidence was within the same transactional context as the indicted offense, the trial court's admission of the evidence will be upheld where it withstands the Rule 404(b) extraneous offense analysis. *See Santellan v. State*, 939 S.W.2d 155, 168-69 (Tex. Crim. App. 1997); *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993). When reviewing relevance, the reviewing court must "examine every case on its own facts to determine whether the extraneous transaction is relevant." *Santellan*, 939 S.W.2d at 167. The "other crimes, wrongs, or acts" may tend to establish some elemental fact, such as identity or intent, or tend to establish some evidentiary fact, such as motive, opportunity, or preparation, leading inferentially to an elemental fact, or it may rebut a defensive theory by showing, for example, absence of mistake or accident, in which case it would be relevant. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). Additionally, same transaction contextual evidence may be admissible where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, . . . of any one of them cannot be given without showing the others." *Id.* (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). "[T]he jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Id.* Under Rule 404(b), however, same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Id.*

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. Rule 403 favors admissibility and contains a presumption that relevant evidence is more probative than prejudicial. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). When engaging in a Rule 403 analysis, the trial court must balance the inherent probative force of the proffered evidence, along

6

with the proponent's need for that evidence, against any tendency of the evidence to suggest a decision on an improper basis, any tendency of the evidence to confuse or distract the jury from the main issues, any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate its probative force, and the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 642 (Tex. Crim. App. 2006).

Analysis

At trial, Davidson testified about seizing a clear plastic bag containing a usable amount of white powder believed to be methamphetamine, a clear plastic bag containing approximately 2.2 grams of white powder believed to be methamphetamine, a twelve gauge shotgun, a wooden box with miscellaneous drug paraphernalia, and a syringe with a clear liquid inside. He also named several seized items that he testified were used as key ingredients in the process of manufacturing methamphetamine, that is, four lithium batteries, five boxes of pseudoephedrine pills, a bottle of muriatic acid, and a bottle of iodine. Finally, he described a homemade gas generator used in the process of manufacturing methamphetamine that had also been seized.

Davidson had named all of the items except the generator when Appellant objected. She objected that all but one of the items are irrelevant to the charge for which she was on trial and argued that introducing evidence of all ten of these items was "so inflammatory as to create a bias on the part of the jury." The State contended the introduction of the evidence seized during the execution of the search warrant provided contextual background evidence, and was res gestae of the offense.

To the extent the testimony regarding the seized items was objectionable, the objectionable nature was evident in the numerous questions propounded by the State and the answers given by Davidson before Appellant made her objection. Appellant has made no attempt on appeal to justify her delay in objecting to the questions about the items seized and Davidson's answers. Further, no legitimate reason is apparent from the record. Therefore, Appellant's objection was untimely as to all of the items except the generator, and error as to those items, if any, is waived. *See Lagrone*, 942 S.W.2d at 618. We will, however, review the admissibility of the evidence relating to all of the seized evidence.

7

The items seized from the camper had been seen in the camper by the confidential informant within a few days before the search. The informant's statements regarding those items, as well as his conversations with the persons named in the warrant, formed the basis for the search warrant. The evidence of other crimes established opportunity and rebutted the potential defensive theories of accident or mistake. Thus, evidence of the items seized was compelling evidence in support of the State's allegation that Appellant, who was in the small locked camper, was in possession of the methamphetamine, which was found on the counter in plain sight. *See Wyatt*, 23 S.W.3d at 25. The other items seized during the search of the camper were in plain view and were so intertwined with the indicted case for which Appellant was on trial that they formed an indivisible criminal transaction. Therefore, the court did not err in determining that the numerous items found in the camper were relevant pursuant to Rule 404(b). *See id.*

Appellant also contends that the evidence is inadmissible because its probative value is outweighed by its prejudicial effect. At trial, she argued that the evidence is "so inflammatory as to create a bias on the part of the jury." We weigh the probative value of the numerous seized items against several factors that would indicate undue prejudice. *See Gigliobianco*, 210 S.W.3d at 642.

The State used little time introducing the entire list of the contextual evidence, and only a few additional moments after Appellant's objection to include the gas generator. Testimony regarding the seized items was highly probative in that it set the stage, explaining Appellant's surroundings at the time of the search. As such, it did not influence the jury in "some irrational, yet indelible way."

The State had a need for this evidence to prove a fact of consequence, to establish that Appellant was in possession of the methamphetamine, and to rebut any possible allegations by Appellant that the search warrant that brought the officers to the small camper was invalid. Moreover, as the *Wyatt* court noted, "[a]ny evidence presented by the State is generally prejudicial to the defendant," but where the evidence is so intertwined, "evidence of one was necessarily probative of the other." *Wyatt*, 23 S.W.3d at 26. We cannot say the trial court abused its discretion in admitting the evidence of the items seized during the execution of the search warrant. *See Gigliobianco*, 210 S.W.3d at 642. We overrule Appellant's second issue.

In her third issue, Appellant contends the evidence is insufficient to support her conviction of possession of a controlled substance because "there was no affirmative link to the Appellant and the controlled substance and the other items seized during the search." She argues that, while the State proved she was present when officers arrived to execute the warrant, it failed to prove that she exercised care, control, and management over the methamphetamine or that she knew the substance was contraband. It is unclear from her brief whether the basis of her complaint is legal or factual insufficiency. The prayer in her brief asks us to either reverse and remand or set aside the conviction. In the interest of justice, we will address both the legal and the factual sufficiency of the evidence.

## Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Likewise, it is the responsibility of the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

In conducting a factual sufficiency review, we look at the evidence in a neutral light. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). A verdict will be set aside if the evidence supporting the conviction, although legally sufficient, is so weak that the jury's determination is clearly wrong and manifestly unjust, or when there is some objective basis in the record that shows the great weight and preponderance of the evidence contradicts the jury's verdict. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006). A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Berry*, 233

S.W.3d at 854.

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the jury's determinations. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417. Finally, under Texas Rule of Evidence 802, the jury is entitled to give probative value to "inadmissible hearsay admitted without objection." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Chambers v. State*, 711 S.W.2d 240, 247 (Tex. Crim. App. 1986).

## Applicable Law

A person commits the offense of possession of less than one gram of methamphetamine if she knowingly or intentionally possesses less than a gram of methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (Vernon 2003). Possession is defined as having "actual care, custody, control, or management" of the controlled substance. TEX. PENAL CODE ANN. § 1.07 (39) (Vernon Supp. 2008).

To support a conviction for possession of a controlled substance, the state must also prove two elements: "(1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Poindexter*, 153 S.W.3d at 405. If the accused is not in exclusive possession of the contraband, the state must show additional independent facts and circumstances that affirmatively link the accused and the contraband. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981). Mere presence where the drugs are found is insufficient alone, but when combined with other evidence, either direct or circumstantial ("links"), may well be sufficient to establish knowing possession, control, management, or care of the contraband beyond a reasonable doubt. *Evans*, 202 S.W.3d at 162.

The following is a list of possible, nonexclusive links that have been recognized as sufficient, either singly or in combination, to establish a person's knowing possession of

10

contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 163 n.12.

<u>Analysis</u>

In arguing that she did not exercise control over the methamphetamine, Appellant emphasizes that, as the photographs clearly showed, she was not present in the camper when the officers searched it, but was sitting outside. However, as Davidson testified, the photographs at issue were taken some time after Appellant's arrest inside the camper and removal from the camper by the officers. The crucial time, in a links assessment, is the actual moment the search warrant is served, and the focus is whether the defendant is on the premises around the drugs when the warrant is served. It does not matter where the officers placed a person in custody during the search. Appellant and her codefendant locked themselves in the small camper when the officers arrived. Accordingly, Appellant's presence during the search clearly supports the jury's guilty verdict.

The evidence at trial established that Appellant and Ben Coleman were in the camper when the officers served the warrant. The camper's only door was locked, requiring the officers to pry open the door to enter. Appellant and Coleman were then handcuffed and placed outside the cramped camper's confines so the officers could search the camper. The methamphetamine, as well as the methamphetamine manufacturing precursors and drug manufacturing paraphernalia, were in plain sight in the camper. Some of those items were on the small kitchen counter, which the deputy described as being "one step to the left" as one enters the door of the small camper. Further, Davidson's affidavit supporting the warrant includes the assertion that the confidential informant reported having been told by Appellant that she and Mike Moore were manufacturing

11

methamphetamine.

There were a number of links that connected Appellant to the contraband. Locking the door and refusing to open the door to officers serving a search warrant constitutes a furtive gesture. In the very tight confines of the camper, all the narcotics and drug precursors would be, at most, a few steps from anyone in the camper. The counter laden with narcotics and other paraphernalia was only a step from the locked door. Appellant was in close proximity to all these items, which were in plain sight. Appellant's presence in the camper, coupled with these links, is sufficient evidence for the jury to determine that Appellant had custody, control, or management over the contraband. *See Evans*, 202 S.W.3d at 162-63.

Additionally, according to Davidson's testimony, the confidential informant had spoken with Appellant over a period of time and she talked about manufacturing methamphetamine at that site. The jury was entitled to believe this hearsay evidence and credit it against Appellant. *See Poindexter*, 153 S.W.3d at 406. Further, under the circumstances, the jury could infer that Appellant knew the substance was contraband. *See Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.–Houston [14th Dist.] 1999, no pet.).

In viewing the evidence in the light most favorable to the verdict, we cannot say that a rational trier of fact could not have found guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is legally sufficient to support Appellant's conviction. *See id.*

In conducting a factual sufficiency review, the reviewing court looks at all the evidence, both that which is supportive of the guilty verdict, and that which is not supportive of the guilty verdict. *See Lancon*, 253 S.W.3d at 705. Weighing against the jury's guilty verdict is the fact that Appellant was not in sole possession of the camper when the officers executed the warrant. However, that fact is not such that would undermine the confidence in the jury's guilty verdict. Thus, the State's evidence supporting the conviction is not so weak as to be clearly wrong or manifestly unjust, nor is the verdict against the great weight and preponderance of the available evidence. *See Berry*, 233 S.W.3d at 854. We conclude that the evidence is factually sufficient to support the conviction.

We overrule Appellant's third issue.

12

Having overruled Appellant's three issues, we ***affirm*** the trial court's judgment.


    SAM GRIFFITH    
Justice


Opinion delivered September 23, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)